# Third District Court of Appeal

## State of Florida

Opinion filed September 1, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-71
Lower Tribunal Nos. 09-333 SP; 19-310 AP
_____

**United Automobile Insurance Company**,
Appellant,

vs.

**Stand-Up MRI of Miami, Inc., a/a/o Omaira Perez**,
Appellee.

An appeal from the County Court for Miami-Dade County, Linda Diaz, Judge.

Michael J. Neimand, for appellant.

George A. David, P.A., and George A. David, for appellee.

Before LOGUE, SCALES, and LINDSEY, JJ.

LOGUE, J.

United Automobile Insurance Company appeals the trial court's order granting final summary judgment in favor of Stand-Up MRI of Miami, Inc., as

assignee of Omaira Perez, and a separate order denying United Auto's motion for summary judgment. We find that there are no issues of material fact in dispute. We disagree, however, with the trial court's conclusion that United Auto waived its no-coverage affirmative defense. We therefore reverse and remand with instructions to enter summary judgment in favor of United Auto.

**Factual and Procedural Background**

On February 3, 2004, United Auto and Luis Perez entered into a contract for personal injury protection automobile insurance. Both Luis and his wife, Omaira Perez, were listed as insureds and the contract originally covered a 1993 Chevy Geo. This insurance was amended on March 27, 2004 to include coverage on a 1993 Plymouth Voyager. The policy declarations page included an expiration date of February 3, 2005.

On February 5, 2005, United Auto entered into a second insurance contract with Luis for personal injury protection coverage on one listed vehicle: a 1995 GMC Safari. Omaira was also an insured on this policy. Of note, the policy listed the following exclusion: "This insurance does not apply . . . to the named insured or any relative while occupying a motor vehicle of which the named insured is the owner and which is not an insured motor vehicle under this insurance."

2

On March 4, 2005, Omaira was involved in an automobile collision while driving a 1993 Plymouth Voyager. Also in the vehicle were the insureds' two minor children. Omaira and the children were treated at South Miami Health Center and Stand-Up. Omaira assigned benefits to both medical providers which in turn billed United Auto for treatment to Omaira and the children. United Auto paid benefits to South Miami Health Center for all claims submitted and to Stand-Up for claims for the children. However, United Auto denied the claim for Omaira's treatment at Stand-Up. As a result, Stand-Up filed this action.

In response to Stand-Up's complaint, United Auto asserted, as its third affirmative defense, that "there is no coverage in that the subject loss is specifically excluded from coverage under the policy of insurance." United Auto moved for summary judgment based on its no-coverage defense.

In support of its motion, United Auto submitted the February 5, 2005 insurance policy which listed only a 1995 GMC Safari, an affidavit from its underwriting supervisor, Jorge De la O, and an affidavit from its litigation adjuster, Ninel Baptiste. The Baptiste affidavit stated that the Plymouth Voyager involved in the crash was registered to Luis but was not a listed insured vehicle under the policy. The De la O affidavit stated that there were no United Auto policies that insured the vehicle on the date of loss.

In opposition to United Auto's motion, Stand-Up argued, relying upon the policy entered on February 3, 2004, that there was coverage on the Plymouth Voyager that preexisted the coverage for the GMC Safari. While Stand-Up argued that this policy was still in effect, the document it provided in support indicated the policy ended as of February 3, 2005—one month before the March 4, 2005 date of loss.

To support its assertion that the policy was still active, Stand-Up submitted an affidavit from Deborah Todd, Chief of the Bureau of Financial Responsibility, from the Department of Highway Safety and Motor Vehicles. In her affidavit, Todd stated that pursuant to sections 324.0221(1)(a) and 324.242, Florida Statutes, the Bureau is responsible for maintaining records of initiations and cancellations of all personal injury protection and property damage liability insurance policies. According to those records, the policy issued by United Auto covering the Plymouth Voyager was still in effect on March 4, 2005.

Stand-Up also moved for final summary judgment reiterating its position that coverage existed on the vehicle based upon the Todd affidavit and United Auto's payment of other claims arising from the collision. The trial court initially deferred ruling on both motions so that United Auto could conduct additional discovery regarding the Todd affidavit.

4

After investigating the Todd affidavit, United Auto submitted the affidavit of Laura Freeman, Program Manager, from the Bureau of Motorist Compliance for the Department of Highway Safety and Motor Vehicles. On behalf of the Bureau, Freeman stated that "[o]ur database indicated [the policy covering the Plymouth Voyager] was canceled prior to the crash with [an] unknown issue date." Freeman further indicated that at the time the Todd affidavit was prepared, the Department had not received a notice that the policy had been canceled prior to the crash. The Department had since received such notice from United Auto. Freeman concluded that the policy discussed in the Todd affidavit "was not in effect on March 4, 2005."

After reviewing this new affidavit, the trial court denied both parties' summary judgment motions finding that the affidavits created a dispute of material fact as to the existence of coverage. Stand-Up moved for clarification of the trial court's order denying its motion and asked the court to rule on all issues except for those related to the existence of coverage.

The trial court ultimately granted Stand-Up's motion for final summary judgment. In doing so, the trial court concluded that United Auto had waived its no-coverage defense by paying other claims arising out of the incident. The court entered final judgment for Stand-Up accordingly, and this appeal followed.

5

**Discussion**

We review a trial court's ruling on a motion for summary judgment de novo. <u>Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000). "Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." <u>Id.</u> Summary judgment "is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings." <u>The Fla. Bar v. Greene</u>, 926 So. 2d 1195, 1200 (Fla. 2006).

The evidence submitted by the parties leaves no question of material fact as to whether the Plymouth Voyager was covered under an active United Auto policy on the date of loss—it was not. Neither the policy documents submitted by Stand-Up, nor the Todd affidavit are legally sufficient to challenge United Auto's no-coverage defense. Therefore, the trial court erred in denying summary judgment for United Auto.

In its motion for summary judgment, United Auto submitted an active policy for the insureds that did not include the Plymouth Voyager involved in the reported loss. The policy provisions specifically excluded coverage for any loss which occurred in a vehicle belonging to the insured but not included in the policy. In addition to this policy, United Auto submitted the affidavits of

6

two employees with access to and knowledge of its policy database stating that United Auto had no policy in effect covering the vehicle. This was sufficient to satisfy United Auto's burden that it was entitled to judgment as a matter of law on its no-coverage affirmative defense.

Even though Stand-Up submitted a United Auto policy document listing the Plymouth Voyager, the policy had an end date of February 3, 2005. The collision in this case occurred on March 4, 2005. This policy document, therefore, was not sufficient to show a dispute of material fact as to whether coverage existed on the date of loss. To show the prior policy was still in effect on the date of loss, Stand-Up relied on the Todd affidavit.

The Todd affidavit stated, based on the records of the Department of Highway Safety and Motor Vehicles, that there was an active policy in effect on March 4, 2005, covering the Plymouth Voyager. However, the Freeman affidavit established that the Todd affidavit was based on outdated information. Both affidavits related only to the records held by the Department. These records are updated through submissions from insurance companies, not the independent investigation of the Department. Even if Todd were called to testify at trial, all she could testify to was that, before the records were updated, they did not indicate the first policy had

7

lapsed, but, when updated, the records indicate the policy had lapsed and been replaced with the later policy.

Accordingly, based on the pre-loss end date in the insurance policy submitted by Stand-Up and the Freeman affidavit providing the updated information from the Department's records since the time the Todd affidavit was submitted, Stand-Up failed to produce any evidence to indicate that the earlier policy was in effect on the date of loss.

Stand-Up next argues that United Auto waived its no-coverage defense by paying other claims arising from the same incident. This argument fails because waiver cannot create insurance coverage when there is no policy to support coverage.

"For many years the law in Florida has been well established that the doctrine of waiver and estoppel based upon the conduct or the action of the insurer (or an agent) is <u>not</u> applicable to matters of <u>coverage</u> as distinguished from grounds for <u>forfeiture</u>." <u>Doe v. Allstate Ins. Co.</u>, 653 So. 2d 371, 373 (Fla. 1995) (emphasis in original) (citation omitted). In ruling that United Auto waived its no-coverage defense, the trial court relied upon <u>Echo v. MGA Ins. Co.</u>, 157 So. 3d 507 (Fla. 1st DCA 2015). In <u>Echo</u>, an insurance company sought recission of an insurance contract because of material misrepresentations in the insurance application. The insurer sought recission

after it had already paid a benefit on the insurance contract. The First District held that "when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof." Id. at 511 (citation omitted).

The trial court's reliance on this case was misplaced. The Echo Court stated in its reasoning that "[s]imply because [the insurer] deemed the contract void because of [the insured]'s alleged misrepresentation does not mean the contract never existed." Id. The case, therefore, stands for nothing more than the fact that when an insurance contract exists, an insurer may waive a defense that the contract is void. "In other words, while an insurer may be estopped by its conduct from seeking a forfeiture of a policy, the insurer's coverage or restrictions on the coverage cannot be extended by the doctrine of waiver and estoppel." Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So. 2d 560, 563 (Fla. 4th DCA 1972) (emphasis in original).[1]

---

[1] Stand-Up also argues that United Auto was estopped from denying coverage based on its payment of other claims citing Axis Surplus Insurance Company v. Caribbean Beach Club Association, 164 So. 3d 684 (Fla. 2d DCA 2014), and Criterion Leasing Group v. Gulf Coast Plastering & Drywall, 582 So. 2d 799 (Fla. 1st DCA 1991). These cases involved conduct by the insurer which reasonably induced action by the other party. No such conduct occurred here. Stand-Up cannot assert that it relied on United Auto's

9

Here, United Auto showed proof that its policy provides no coverage for an insured driving a car owned by the insured or their family, but which is not listed on the policy. It was error for the trial court to extend coverage through the doctrine of waiver based on previous payments of claims stemming from the same incident.

Reversed and remanded with instructions.

---

payment of other claims arising from the crash when its treatment occurred before those payments were remitted.